## JOHN WILSON
### v.
## J. N. BONDURANT ET AL.

*Real Property—Drainage—Act of June 4, 1889, Sec. 4—License—Revocation.*

1.  The owner of the dominant heritage may drain the water from his land upon lower lands in natural course of drainage, and while he may not create new channels in the lower fields, he may make such drains for agricultural purposes, on his own land, as may be required for proper tillage. though by so doing he may increase the flow in the natural channel, and the rule applies to highways as well as to lands devoted to private uses.

2.  For such action on the part of the dominant owner, no license from the servient owner is required.

3.  The words, "to construct any such drain, etc.," used in Sec. 4 of the Act approved June 4, 1889 (Sess. Laws 1889, 116), should be understood to refer to the subject-matter of Sec. 1 of said act and should be construed to mean a continuous drain formed by connecting several drains made by each owner on his own land.

4.  Upon a bill filed to enforce an alleged right to revoke a license or permission to defendants in error to drain waters coming from certain lands and a highway, over and through a ditch complainant constructed upon his own land, this court declines, it not appearing that any license had been granted which, by "existing laws" could be revoked, to interfere with the decree for the defendants.

[Opinion filed December 3, 1891.]

In ERROR to the Circuit Court of Ford County; the Hon. ALFRED SAMPLE, Judge, presiding.

Bill filed June 30, 1890, by John Wilson, plaintiff in error, recites that he is a resident of Ford County, Illinois, and for twenty years last past has been the owner in fee of the S. E. ¼ of Sec. 24, Township 24 North, Range 9, East of the 3rd P. M., in said county; that along the east side thereof, running north and south, is a highway, on the line between the counties of Ford and Iroquois; that said highway is under the jurisdiction and control of the commissioners of highways of the town of Wall in said county of Ford.

That J. N. Bondurant owns the eighty acres in Iroquois County, lying next east of the complainant's said land.

That N. P. Busch owns the land adjoining complainant's on the north. In 1883 complainant dug an open ditch from a point about the center of his east line, northwesterly, to about the center of his north line, connecting with an open drain dug by said Busch in a northeasterly direction to Spring Creek in said Iroquois County. That shortly after complainant dug his said ditch, said town, by its commissioners, graded said public highway and dug a ditch on the west side of it so that the water on said highway and that coming onto the highway from Bondurant's land, by means of a tile drain into said highway ( which was made without the consent of said commissioners), ran said water into complainant's ditch on his land. No agreement in writing was ever made between the complainant, Busch, or Bondurant, or their grantors, or the authorities of the town, in regard to said ditches, each ditch or tile drain being made by the owners of the premises respectively of his own motion, and joined without any writing or agreement of any kind.

The authority so to drain through complainant's ditch was simply by use or acquiescence. Said Busch about June 1st revoked any license the complainant, or said town, or said Bondurant, or their grantors may have had, by filling the ditch across his land.

On June 30, 1890, the complainant revoked all license theretofore granted, if any, to said town and said Bondurant, to use said ditch across his land, by filling it up, and by giving said commissioners and Bondurant notice in December, 1889, that he had revoked such license.

Prayer for process against J. N. Bondurant, William Gilkerson, James Andrews and Henry Dakin, as commissioners of highways for said town, parties defendant to the bill, that they should answer without oath, and that on the hearing the act of complainant in filling up said ditch and revoking said license should be approved and affirmed, and that the defendants be enjoined from draining the water on said highway and that coming from the land of said Bondurant into

the said ditch, and from interfering with the filling of said ditch by complainant, and that said commissioners be required to fill any ditch made by them in the highway tapping complainant's ditch, and for general relief.   Demurrer to the bill sustained.   Complainant elects to stand by his bill and decree entered dismissing the same at his cost.

Messrs. KAY & KAY, for plaintiff in error.

Messrs. MORRIS & HOOPER and J. H. MOFFETT & DAY, for defendants in error.

WALL, P. J.   The bill was predicated upon Sec. 4 of the act approved June 4, 1889, (Sess. Laws 1889, 116,) and the question is whether the facts alleged present a case within that section.

The first section of said act provides, that whenever any open ditch has been or shall be constructed by mutual license, consent or agreement of the owner or owners of adjoining or adjacent lands, either separately or jointly, so as to make a continuous line upon, over, or across the lands of said owners, or where the owner or owners of adjoining or adjacent lands shall, by mutual consent, etc., be permitted to connect a drain with another so constructed, or where the owner of lower lands has connected, or shall connect, a drain to a drain constructed by the owner or owners of the upper lands, then such drains shall be held to be a drain for the mutual benefit of all the lands so interested therein.

Sec. 2 provides that no one of such owners may authorize another person to connect with such drain without consent of all parties interested, and any drain so connected without such consent shall be unlawful, and any person interested may, by bill in chancery, compel such drain to be filled and may also have his action for damages.

Sec. 3 provides that none of the parties interested in such continuous drain may fill the same or in any manner obstruct the flow of water therein, and that the license, consent or agreement mentioned need not be in writing, but

may be by parol and may be inferred from acquiescence of the parties in the construction of the drain.

Sec. 4 reads thus: "This act shall not be held to apply to any cause now pending in any court of this State nor deprive any party of the right he may have under existing laws to revoke any parol license heretofore granted to construct any such drain upon, across or over his lands provided such right be exercised and suit commenced to enforce the same within one year from the time this act takes effect; but if not thus exercised and suit brought within one year, he shall be forever barred from thereafter revoking such license."

What is meant by the expression here used, "the right he may have under existing laws to revoke any parol license heretofore granted to construct any such drain upon, across or over his lands?" Referring to the first section, it will be seen that when two or more drains are connected in either of the ways mentioned, so as to be continuous, then such connected drains shall be held to be a drain for the benefit of all the lands interested therein, and referring to the title of the act we find it reads thus:

"An act declaring legal, drains heretofore or hereafter constructed by mutual license, consent or agreement, by adjacent or adjoining owners of land, and to limit the time within which such license or agreement heretofore granted may be withdrawn."

Construing it all together we are inclined to hold that the words, "to *construct* any such drain," etc., used in the fourth section, should be understood to refer to the subject-matter of the first section, and not to any different or other matter; while these words taken alone are somewhat inapt for the purpose of designating a continuous drain formed by connecting several drains made by each owner on his own land, yet it is reasonably apparent that such was the meaning intended. Otherwise the act would have, or might have, a very harsh effect in making permanent and irrevocable what was before only temporary and revocable. Such a construction is not to be adopted unless very clear.

The fourth section limits the right of revocation to one year

Wilson v. Bondurant.

from the time the act is in force, and requires "a suit commenced to enforce the same," within that period. What sort of suit is not stated, and it would be intended that the action should be appropriate for the purpose. It is not objected that the remedy by bill in chancery is inappropriate, and without deciding the point it may be assumed for the present case that it is the proper form of action.

The question then remaining is, whether the facts alleged show a "right under existing laws to revoke" the parol license under which the highway commissioners were permitted to connect with the complainant's drain. Does it appear by the bill that there was here any occasion or necessity for a license to the highway commissioners to make such connection? The bill is not definite upon the point, but it is conceded in the argument of plaintiff in error that it may be assumed that Bondurant and the commissioners were seeking an outlet for the water in the natural course of drainage.

The pleading must be taken most strongly against the pleader, and in the absence of averment showing a state of case where the license of complainant was necessary, it is to be presumed it was unnecessary.

The owner of the dominant heritage may drain the water from his land upon the lower lands in natural course of drainage, and while he may not create new channels in the lower fields, he may make such drains for agricultural purposes, on his own land, as may be required for proper tillage, though by so doing he may increase the flow in the natural channel. Peck v. Herrington, 109 Ill. 611. The rule applies to highways as well as to lands devoted to private uses.

For such action on the part of the dominant owner no license from the servient owner is required, and in a case so arising there would be nothing to revoke. As it does not appear by the facts averred, that any license had been granted which by "existing laws" could be revoked, we are of opinion the bill was defective in substance and that the demurrer was properly sustained. The decree will be affirmed.

*Decree affirmed.*